Vargas v City of New York (2019 NY Slip Op 00370)





Vargas v City of New York


2019 NY Slip Op 00370


Decided on January 22, 2019


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on January 22, 2019

Richter, J.P., Manzanet-Daniels, Kapnick, Kern, Moulton, JJ.


7392 150556/11

[*1]Walter Vargas, Plaintiff-Appellant,
v
The City of New York, Defendant-Respondent. The Legal Aid Society, Bronx Defenders, Brooklyn Defender Services, Community Service Society of New York, Center on the Administration of Criminal Law at New York University School of Law, Center on Race, Law and Justice at Fordham University Law School, Katal Center for Health, Equity, and Justice, and Brooklyn Community Bail Fund, Amici Curiae.


Lincoln Square Legal Services, Inc., New York (Martha Rayner of counsel), for appellant.
Zachary W. Carter, Corporation Counsel, New York (Claude Platton of counsel), for respondent.
The Legal Aid Society, New York (Zohra Ahmed of counsel), for amici curiae.



Order, Supreme Court, New York County (James E. d'Auguste, J.), entered April 17, 2017, which denied plaintiff's motion for summary judgment and for a declaration that the New York Police Department's policy and practice of stops of subway passengers who commit transit infractions for the purpose of conducting "transit recidivist" checks violates the New York State Constitution's prohibition against unreasonable search and seizure, and granted defendant's cross motion for summary judgment dismissing the first amended complaint, affirmed, without costs.
The police officers had probable cause to arrest plaintiff based on their observation that he committed the transit offense of passing between two subway cars on a moving train (see 21 NYCRR §§ 1050.9[d], 1050.10[a]; CPL 140.10 [1][a]; Penal Law § 10[1]). Although we have concerns about the information in the transit database, we do not reach this issue in light of our holding on probable cause. Once plaintiff was arrested, the officers were permitted to conduct a search incident to arrest (see People v Rodriguez, 84 AD3d 500, 501 [1st Dept 2011], lv denied 17 NY3d 861 [2011]).
All concur except Manzanet-Daniels, J. who concurs in a separate memorandum as follows:




MANZANET-DANIELS, J. (concurring)


I agree with the majority that the police officers had probable cause to arrest plaintiff based on their observation that he committed the transit offense of passing between two subway cars on a moving train (see 21 NYCRR §§ 1050.9[d], 1050.10[a]; CPL 140.10 [1][a]; Penal Law § 10[1]). I also agree with the majority that plaintiff's attempt to conceal a marijuana cigarette from the officers gave them probable cause to believe plaintiff had committed a crime, i.e., felony tampering with physical evidence (PL 215.40[2]), and misdemeanor criminal possession of marijuana (PL 221.10[1]).
It must be said that plaintiff's designation as a transit recidivist did not give the officers a separate basis to arrest plaintiff (see People v Smith, 44 NY2d 613, 622 [1978]). The definition of "transit recidivist" at the time of plaintiff's arrest encompassed not only persons convicted of crimes, but those with prior arrests in the transit system or prior felony arrests within New York City [FN1]. This overbroad classification subverted the presumption of innocence and likely violated state sealing laws.[FN2]
As amici note, the database was likely contaminated by sealed arrests and summons histories and, as such, ran afoul of provisions of the Criminal Procedure Law that require that the records of any criminal prosecution terminating in a person's favor or by way of noncriminal conviction be sealed (see CPL §§ 160.50. 160.55, 170.55, 170.56). Statistics cited by the amici indicate that in 2016 alone, over 50% of all criminal cases arraigned in New York City Criminal Court were terminated in favor of the accused, and accordingly entitled to sealing [FN3]. From 2007 through 2015 an average of 23% of all criminal summonses were dismissed for facial insufficiency [FN4]. Unless otherwise permitted by law, no one, including a private or public agency, can access a sealed record, except with a court order upon a showing that justice so requires.
The presence of arrest and summons data in the database also undercut the presumption of innocence insofar as persons were threatened with punishment on account of allegations that may have been unsubstantiated or dismissed.
It bears noting that this is not the first NYPD database to have included unlawfully broad data. NYPD previously recorded the name of every individual stopped and frisked as recently as 2010, until forced by a federal lawsuit to discontinue the practice.
Finally, there is little doubt that the "transit recidivist" database had a disproportionately negative effect on black and Hispanic communities, perpetuating this City's history of overpolicing communities of color.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: JANUARY 22, 2019
CLERK



Footnotes

Footnote 1:The policy has since been amended and no longer applies to those with prior arrests.

Footnote 2:It is unclear from the record why, precisely, plaintiff was deemed a transit recidivist under the policy in effect at the time of his arrest in 2010.

Footnote 3:See Criminal Court of the State of New York Annual Report 2016, at 17.

Footnote 4:See Stipulation and Proposed Preliminary Approval Order at ¶ 5, Stinson v City of New York, 282 FDR 360 [SD NY 2012]).